**I. Preliminary Instructions**

       *a. General Preliminary Instruction*

<u>Members of the Jury:</u>
Now that you've been sworn, I need to explain some basic principles about a civil trial and your duty as jurors. These are preliminary instructions. I'll give you more detailed instructions at the end of the trial.

<u>The Jury's duty:</u>
It's your duty to listen to the evidence, decide what happened, and apply the law to the facts. It's my job to provide you with the law you must apply—and you must follow the law even if you disagree with it.

<u>What is evidence:</u>
You must decide the case on only the evidence presented in the courtroom. Evidence comes in many forms. It can be testimony about what someone saw, heard, or smelled. It can be an exhibit or a photograph. It can be someone's opinion.

Some evidence may prove a fact indirectly. Let's say a witness saw wet grass outside and people walking into the courthouse carrying wet umbrellas. This may be indirect evidence that it rained, even though the witness didn't personally see it rain. Indirect evidence like this is also called "circumstantial evidence"— simply a chain of circumstances that likely proves a fact.

As far as the law is concerned, it makes no difference whether evidence is direct or indirect.  You may choose to believe or disbelieve either kind. Your job is to give each piece of evidence whatever weight you think it deserves.

<u>What is not evidence:</u>
During the trial, you'll hear certain things that are not evidence and you must not consider them. First, the lawyers' statements and arguments aren't evidence. In their opening statements and closing arguments, the lawyers will discuss the case. Their remarks may help you follow each side's arguments and presentation of evidence. But the remarks themselves aren't evidence and shouldn't play a role in your deliberations.

Second, the lawyers' questions and objections aren't evidence. Only the witnesses' answers are evidence. Don't decide that something is true just because a lawyer's question suggests that it is. For example, a lawyer may ask a witness, "You saw Mr.

Jones hit his sister, didn't you?" That question is not evidence of what the witness saw or what Mr. Jones did—unless the witness agrees with it.

There are rules of evidence that control what the court can receive into evidence. When a lawyer asks a witness a question or presents an exhibit, the opposing lawyer may object if he or she thinks the rules of evidence don't permit it. If I overrule the objection, then the witness may answer the question or the court may receive the exhibit. If I sustain the objection, then the witness cannot answer the question, and the court cannot receive the exhibit. When I sustain an objection to a question, you must ignore the question and not guess what the answer might have been.

Sometimes I may disallow evidence—this is also called "striking" evidence—and order you to disregard or ignore it. That means that you must not consider that evidence when you are deciding the case.

I may allow some evidence for only a limited purpose. When I instruct you that I have admitted an item of evidence for a limited purpose, you must consider it for only that purpose and no other.

<u>Credibility of witnesses:</u>
To reach a verdict, you may have to decide which testimony to believe and which testimony not to believe. You may believe everything a witness says, part of it, or none of it. When considering a witness's testimony, you may take into account:

- the witness's opportunity and ability to see, hear, or know the things the witness is testifying about;
- the witness's memory;
- the witness's manner while testifying;
- any interest the witness has in the outcome of the case;
- any bias or prejudice the witness may have;
- any other evidence that contradicts the witness's testimony;
- the reasonableness of the witness's testimony in light of all the evidence; and
- any other factors affecting believability.

At the end of the trial, I'll give you additional guidelines for determining a witness's credibility.

Description of the case:
This is a civil case. To help you follow the evidence, I'll summarize the parties' positions. The Plaintiff, Myra Furcron, claims the Defendant, Mail Centers Plus, LLC ("MCP"), subjected her to a hostile work environment by way of sexual harassment. MCP denies those claims and contends that: (1) the alleged harassment was not based on sex; (2) Plaintiff failed to avail herself of the internal procedures for reporting and resolving complaints of alleged discrimination; and (3) despite Plaintiff's failure, MCP took prompt remedial action.

Burden of proof:
Ms. Furcron has the burden of proving her case by what the law calls a "preponderance of the evidence." That means Ms. Furcron must prove that, in light of all the evidence, what she claims is more likely true than not. So, if you could put the evidence favoring Ms. Furcron and the evidence favoring MCP on opposite sides of balancing scales, Ms. Furcron needs to make the scales tip to her side. If Ms. Furcron fails to meet this burden, you must find in favor of MCP.

To decide whether any fact has been proved by a preponderance of the evidence, you may—unless I instruct you otherwise—consider the testimony of all witnesses, regardless of who called them, and all exhibits that the court allowed, regardless of who produced them. After considering all the evidence, if you decide a claim or fact is more likely true than not, then the claim or fact has been proved by a preponderance of the evidence.

On certain issues, called "affirmative defenses," MCP has the burden of proving the elements of a defense by a preponderance of the evidence. I'll instruct you on the facts MCP must prove for any affirmative defense. After considering all the evidence, if you decide that MCP has successfully proven that the required facts are more likely true than not, the affirmative defense is proved.

Conduct of the jury:
While serving on the jury, you may not talk with anyone about anything related to the case. You may tell people that you're a juror and give them information about when you must be in court. But you must not discuss anything about the case itself with anyone.

You shouldn't even talk about the case with each other until you begin your deliberations. You want to make sure you've heard everything—all the evidence, the lawyers' closing arguments, and my instructions on the law—before you begin

deliberating. You should keep an open mind until the end of the trial. Premature discussions may lead to a premature decision.

In this age of technology, I want to emphasize that in addition to not talking face-to-face with anyone about the case, you must not communicate with anyone about the case by any other means. This includes e-mails, text messages, and the Internet, including social networking websites such as Facebook, Instagram, and Twitter.

You also shouldn't Google or search online or offline for any information about the case, the parties, or the law. Don't read or listen to the news about this case, visit any places related to this case, or research any fact, issue, or law related to this case. The law forbids the jurors to talk with anyone else about the case and forbids anyone else to talk to the jurors about it. It's very important that you understand why these rules exist and why they're so important. You must base your decision only on the testimony and other evidence presented in the courtroom. It is not fair to the parties if you base your decision in any way on information you acquire outside the courtroom. For example, the law often uses words and phrases in special ways, so it's important that any definitions you hear come only from me and not from any other source. Only you jurors can decide a verdict in this case. The law sees only you as fair, and only you have promised to be fair—no one else is so qualified.

Taking notes:
If you wish, you may take notes to help you remember what the witnesses said. If you do take notes, please don't share them with anyone until you go to the jury room to decide the case. Don't let note-taking distract you from carefully listening to and observing the witnesses. When you leave the courtroom, you should leave your notes hidden from view in the jury room.

Whether or not you take notes, you should rely on your own memory of the testimony. Your notes are there only to help your memory. They're not entitled to greater weight than your memory or impression about the testimony.

Course of the trial:
Let's walk through the trial. First, each side may make an opening statement, but they don't have to. Remember, an opening statement isn't evidence, and it's not supposed to be argumentative; it's just an outline of what that party intends to prove.

Next, Ms. Furcron will present her witnesses and ask them questions. After Ms. Furcron questions the witness, MCP may ask the witness questions—this is called "cross examining" the witness. Then MCP will present its witnesses, and Ms.

Furcron may cross-examine them. You should base your decision on all the evidence, regardless of which party presented it.

After all the evidence is in, the parties' lawyers will present their closing arguments to summarize and interpret the evidence for you, and then I'll give you instructions on the law.

You'll then go to the jury room to deliberate.

### b. Jury Questions

During this trial, you may submit questions to a witness after the lawyers have finished their own questioning. Here is how the procedure works: After each witness has testified, and the lawyers have asked all of their questions, I'll ask if any of you have questions. If you have a question, write it down and give it to the court staff.

You may submit a question for a witness only to clarify an answer or to help you understand the evidence. Our experience with juror questions indicates that jurors rarely have more than a few questions for any one witness, and there may be no questions at all for some witnesses.

If you submit a question, the court staff will give it to me and I'll share your questions with the lawyers in the case. If the rules of evidence allow your question, one of the lawyers or I will read your question to the witness. I may modify the form or phrasing of a question so that it's allowed under the evidence rules.

Sometimes, I may not allow the questions to be read to the witness, either because the law does not allow it or because another witness is in a better position to answer the question. If I can't allow the witness to answer a question, you must not draw any conclusions from that fact or speculate on what the answer might have been.

Here are several important things to keep in mind about your questions for the witnesses:
- First, you must submit all questions in writing. Please don't ask any questions aloud.
- Second, the court can't re-call witnesses to the stand for additional juror questions. If you have a question for a particular witness, you must submit it when I ask.
- Finally, because you should remain neutral and open-minded throughout the trial, you should phrase your questions in a way that doesn't express an

5

opinion about the case or a witness. You must keep an open mind until you've heard all the evidence, the closing arguments, and my final instructions on the law.

### c. *Interim Statements*

At times during the trial, the lawyers will address you. You'll soon hear the lawyers' opening statements, and at the trial's conclusion you'll hear their closing arguments. Sometimes the lawyers may choose to make short statements to you, either to preview upcoming evidence or to summarize and highlight evidence they just presented. These statements and arguments are the lawyers' views of the evidence or of what they anticipate the evidence will be. They are not evidence themselves.

## II.     Title VII—Civil Rights Act—Workplace Harassment by Co-Worker

In this case, Ms. Furcron claims that MCP violated Federal Civil Rights statutes that prohibit employers from discriminating against employees in the terms and conditions of their employment because of their sex. These statutes prohibit the creation of a hostile work environment caused by harassment because of an employee's sex.

Specifically, Ms. Furcron claims that Danny Seligman harassed her because of her sex, that the alleged harassment created a hostile work environment for her, and that MCP knew, or in the exercise of reasonable care should have known about, the alleged harassment, but did not take prompt remedial action.

MCP denies Ms. Furcron's claims and asserts that Ms. Furcron was not harassed; any alleged harassment was not based on the fact that she is female; Ms. Furcron did not follow MCP's internal procedures for reporting and resolving complaints of alleged harassment; and that MCP took prompt remedial action when Ms. Furcron complained about Seligman.

To succeed on her claim against MCP, Ms. Furcron must prove each of the following facts by a preponderance of the evidence:

- First: Mr. Seligman harassed Ms. Furcron;
- Second, if Mr. Seligman harassed her, he did so because she is female;
- Second: The harassment created a hostile work environment for Ms. Furcron;
- Third: Ms. Furcron's supervisor knew, or in the exercise of reasonable care, should have known, about the hostile work environment;
- Fourth: MCP failed to take prompt remedial action to eliminate the hostile work environment; and
- Fifth: Ms. Furcron suffered damages because of the hostile work environment.

If Ms. Furcron proves each of these facts, then you shall consider MCP's affirmative defenses. To prevail on its affirmative defenses, MCP must prove each of the following by a preponderance of the evidence:

- MCP did not commit, authorize, or ratify any oppressive, willful, wanton, fraudulent, or malicious act(s) with respect to Ms. Furcron; and
- Some or all of Ms. Furcron's claims are barred by equitable doctrines of estoppels and/or unclean hands.

In the verdict form that I will explain in a moment, you will be asked to answer questions about these factual issues.

A "hostile work environment" created by harassment because of sex exists if:
    (a) Ms. Furcron was subjected to offensive acts or statements about sex;
    (b) Ms. Furcron did not welcome the offensive acts or statements, which means that Ms. Furcron did not directly or indirectly invite or solicit them by her own acts or statements;
    (c) The offensive acts or statements were so severe or pervasive that they materially altered the terms and conditions of Ms. Furcron's employment;
    (d) A reasonable person—not someone who is overly sensitive—would have found that the offensive acts or statements materially altered the terms and conditions of the person's employment; and
    (e) Ms. Furcron believed that the offensive acts or statements materially altered the terms and conditions of her employment.

To determine whether the conduct in this case was "so severe or pervasive" that it materially altered the terms and conditions of Ms. Furcron's employment, you should consider all the circumstances, including:
    (a) How often the discriminatory conduct occurred;
    (b) Its severity;
    (c) Whether it was physically or psychologically threatening or humiliating; and
    (d) Whether it unreasonably interfered with Ms. Furcron's work performance.

A "material alteration" is a significant change in conditions. Conduct that amounts only to ordinary socializing in the workplace does not create a hostile work environment. A hostile work environment will not result from occasional horseplay, sexual flirtation, offhand comments, simple teasing, sporadic use of offensive language, or occasional jokes related to sex. But discriminatory intimidation, ridicule, insults, or other verbal or physical conduct may be so extreme that it materially alters the terms and conditions of employment.

In this case, Ms. Furcron claims that Mr. Seligman, her co-worker, created and carried on the hostile work environment.

You can hold MCP responsible for the hostile work environment only if Ms. Furcron proves by a preponderance of the evidence that MCP knew, or should have known, of the hostile work environment and permitted it to continue by failing to take remedial action.

To show that MCP "should have known" of a hostile work environment, Ms. Furcron must prove that the hostile environment was so pervasive and so open and obvious that any reasonable person in MCP's position would have known that the harassment was occurring.

For the fifth element, if you find that:

(a) Mr. Seligman harassed Ms. Furcron;
(b) If yes, Ms. Seligman harassed Ms. Furcron because she is female;
(c) The harassment created a hostile work environment;
(d) MCP knew, or in the exercise of reasonable care should have known, about the hostile work environment; and
(e) MCP did not take prompt remedial action to eliminate the hostile work environment,

then you must decide whether Ms. Furcron suffered damages because of the hostile work environment.

If the damages would not have existed except for the hostile work environment, then you may find that Ms. Furcron suffered those damages because of the hostile work environment.

If you find that Ms. Furcron suffered damages because of the hostile work environment, you must decide the issue of her compensatory damages.

Compensatory damages: When considering the issue of Ms. Furcron's compensatory damages, you should determine what amount, if any, has been proven by Ms. Furcron by a preponderance of the evidence as full, just and reasonable compensation for all of Ms. Furcron's damages as a result of the hostile work environment, no more and no less. Compensatory damages are not allowed as a punishment and must not be imposed or increased to penalize MCP. Also, compensatory damages must not be based on speculation or guesswork.

You should consider Ms. Furcron's emotional pain and mental anguish, to the extent you find that Ms. Furcron has proved them by a preponderance of the evidence, and no others.

To determine whether and how much Ms. Furcron should recover for emotional pain and mental anguish, you may consider both the mental and physical aspects of

injury—tangible and intangible. Ms. Furcron does not have to introduce evidence of a monetary value for intangible things like mental anguish. You must determine what amount will fairly compensate her for those claims. There is no exact standard to apply, but the award should be fair in light of the evidence.

<u>Punitive Damages</u>: Ms. Furcron also asks you to award punitive damages. The purpose of punitive damages is not to compensate Ms. Furcron but, instead, to punish MCP for wrongful conduct and to deter similar wrongful conduct. You will only reach the issue of punitive damages if you find for Ms. Furcron and award her compensatory damages.

To be entitled to an award of punitive damages, Ms. Furcron must prove by a preponderance of the evidence that MCP acted with either malice or with reckless indifference toward Ms. Furcron's federally protected rights. Specifically, Ms. Furcron's must show that an employee of MCP, acting in a managerial capacity, either acted with malice or with reckless indifference to Ms. Furcron's federally protected rights.

There is no bright-line rule about which employees act in a managerial capacity. You must determine whether an employee acted in a "managerial capacity" based upon the type of authority MCP gave the employee and the amount of discretion that the employee has in what is done and how it is accomplished.

To show that MCP acted with malice, Ms. Furcron must show that an employee acting in a managerial capacity knew that federal law prohibits discrimination and discriminated against Ms. Furcron anyway. To show that MCP acted with reckless indifference to Ms. Furcron's federally protected rights, Ms. Furcron must show that an employee acting in a managerial capacity acted with serious disregard for whether the conduct violated federal law. Either malice or reckless indifference is sufficient to entitle Ms. Furcron to an award of punitive damages; Ms. Furcron need not prove both.

An employer may not be held liable for punitive damages because of discriminatory acts on the part of its managerial employees where the managerial employees' acts are contrary to the employer's good faith efforts to comply with the law by implementing policies and programs designed to prevent unlawful discrimination in the workplace. However, the mere existence of policies prohibiting discrimination does not preclude punitive damages if the policies are ineffective.

There is no single factor that determines whether MCP acted with malice or with reckless indifference to Ms. Furcron's federally protected rights. In determining whether to award punitive damages, you may consider factors such as: (1) whether MCP engaged in a pattern of discrimination toward its employees; (2) whether MCP acted spitefully or malevolently; (3) whether MCP showed a blatant disregard for civil legal obligations; (4) whether MCP failed to investigate reports of discrimination; and (5) whether MCP failed to take corrective action concerning discriminatory acts or comments by its employees.

If you find that punitive damages should be assessed against MCP, you may consider the evidence regarding MCP's financial resources in fixing the amount of such damages.

## MCP's Statement of Contentions

Plaintiff and Danny Seligman, the co-worker whom Plaintiff alleges harassed her, began working together as distribution clerks in Coke Receiving (the KOR) on November 27, 2012.

Seligman has Asperger's Syndrome, but it is generally known to MCP employees in the KOR that Seligman has "autism." Seligman often exhibited mannerisms that were deemed awkward, including staring, standing in people's personal space, brushing up against employees, and talking to people close to their faces.

Three days after Plaintiff and Seligman began working together, Plaintiff took a picture with her cell phone of Seligman's crotch area to show that he had an erection in the workplace. Between December 3, 2012 and December 5, 2012, Plaintiff showed, or attempted to show, the picture to three managers or leads and to more than four non-management employees. Roger Maloney, one of the managers she showed the picture to, advised Plaintiff to contact Human Resources (HR). Plaintiff said she did not want to contact HR. Maloney and other managers instructed Plaintiff to not show the picture to anyone on multiple occasions. Plaintiff continued to do so, going as far to say the cell phone was hers and she could with it as she pleased.

On December 5, 2012 at 10:10 a.m., Plaintiff sent an email to management and HR, which alleged she was fearful of Seligman because he made threats; admitted to stalking a Coke employee; and constantly had an erection. The email contained no allegations of inappropriate verbal and/or physical sexual behavior by Seligman towards Plaintiff or other employees.

On December 5, at 10:15 a.m., Ron Davie, HR Director, and Michael Wright, Supervisor, met with Plaintiff about her concerns that Seligman had an erection, the picture she took of him where she stated she took a picture of him appearing to have an erection have leaving the bathroom to show management. Plaintiff made no mention of Seligman harassing her in any way; touching her; or exhibiting sexually inappropriate behavior towards her but referenced Seligman's autism.

Plaintiff's sexual harassment claim fails because: (1) she failed to follow MCP's internal procedures for reporting and resolving complaints of alleged harassment; (2) her claim is barred by the equitable doctrines of estoppel and/or unclean hands; (3) MCP's purported actions were not malicious, egregious, in bad faith, or in willful or reckless indifference to any legal rights of Plaintiff; and (4) MCP did not commit, authorize, or ratify any oppressive, willful, wanton, fraudulent, or malicious act(s) with respect to Plaintiff.